**LEAVITT LEGAL SERVICES, P.C.**　　　　E-Filed on: 7/16/2025
**JAMES T. LEAVITT, ESQ.**
State Bar No. 012803
601 South 6th Street
Las Vegas, Nevada 89101
Phone: (702) 385-7444 Facsimile: (702) 385-1178
Jamestleavittesq@gmail.com, Leavittecf@gmail.com
Proposed Attorney for Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | BK-25-13929-mkn |
| VEGAS CUSTOM GLASS LLC., | CHAPTER 11<br>SUBCHAPTER V |
| DEBTOR. | |

**OMNIBUS DECLARATION OF VINCENT REGALA IN SUPPORT**
**OF FIRST DAY MOTIONS AND RELATED RELIEF**

I, Vincent Regala, being duly sworn, hereby depose and declare under penalty of perjury:

　　　　1. I am over the age of 18, am mentally competent, and if called upon to testify as to the statements made herein, could and would do so. I make this Declaration in support of the initial emergency motions requesting various types of immediate relief (collectively, the "Initial Motions") filed by VEGAS CUSTOM GLASS LLC., (as applicable, the "Debtor"), in its chapter 11 bankruptcy case (the "Chapter 11 Case"), as well as such other relief as may be requested hereinafter during the case. On July 9th 2025 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-referenced Chapter 11 Case. On its bankruptcy petition, the Debtor elected to proceed under subchapter V of chapter 11.

　　　　2. I am the Debtor's officer, director. and owner. Based upon my position and experience with the Debtor, I am readily familiar with its businesses and financial affairs. All facts set forth in this Declaration are based upon my own personal knowledge, or information learned from my

review of relevant documents maintained in the ordinary course of the Debtor's business and which are business records, and in consultation with the company's legal and other advisors. If called upon to testify as to the contents of this Declaration, I would do so as set forth herein.

3. This Declaration provides the Court with some background information regarding the Debtor, as well as the context for various emergency relief requested in its Chapter 11 Case. Accordingly, this Declaration is organized into two parts: first, a brief overview of the Debtor's businesses and the events leading to its Chapter 11 Case, and second, an explanation of the relief sought in the Debtor's Initial Motions. The relief sought in the Initial Motions is critical to the Debtor's operations, will allow for a smooth transition into chapter 11, and will maximize its chances for success in its reorganization, and thus also the ultimate distributions to creditors.

## I. BACKGROUND

**A. The Debtor's Businesses.**

### Business Operations

4. Vegas Custom Glass, LLC (the "Debtor" or "Company") is a specialized glass fabrication and installation company that provides custom glass solutions to both commercial and residential clients. The Debtor's operations include the design, fabrication, and installation of various glass products and systems, serving a diverse customer base throughout Las Vegas, Nevada.

### Events Leading to Chapter 11 Filing

5. The Debtor's financial distress stems from a confluence of adverse market conditions and operational challenges that have significantly impacted the Company's cash flow and ability to service its debt obligations.

### Material Cost Inflation and Operational Pressures

6. Beginning in February 2025, the Debtor experienced substantial increases in material costs, labor expenses, and general overhead. These cost escalations were driven by industry-wide supply chain disruptions, inflation in raw materials, and increased labor costs within the

construction and glass fabrication sectors. The rapid pace of these increases outpaced the Debtor's ability to adjust pricing on existing contracts, creating negative margin pressure on active projects.

### Collection and Cash Flow Challenges

7. Compounding these operational pressures, the Debtor encountered significant delays in collecting accounts receivable from commercial construction projects. The extended payment cycles, which exceeded the Debtor's historical collection experience and initial projections, created a substantial working capital strain. These collection delays were attributable to general factors such as: project completion delays, customer payment processing delays, and broader economic conditions affecting the commercial construction industry.

### Debt Service Burden

8. The combination of compressed margins and delayed collections created a liquidity crisis that rendered the Debtor unable to maintain regular debt service payments. The weekly remittance requirements on the Company's outstanding loans became increasingly difficult to satisfy, ultimately becoming unsustainable given the Company's constrained cash flow position.

### Decision to File Chapter 11

9. Recognizing that these challenges required a comprehensive restructuring solution, and after careful consideration of available alternatives, the Debtor determined that a Chapter 11 proceeding under Subchapter V would provide the most effective framework to address its financial difficulties while preserving the ongoing business operations and stakeholder value. The Debtor believes that through the Chapter 11 process, it can restructure its debt obligations, improve its operational efficiency, and emerge as a stronger, more sustainable enterprise.

## II. INITIAL MOTIONS

**A. Introduction.**

10. The Debtor's transition into Chapter 11 must be effectively organized to ensure that

it will be able to operate smoothly in bankruptcy and afforded the opportunity to emerge successfully from this Chapter 11 Case. Accordingly, it is critical that the Debtor maintain its Businesses, and minimize the distractions to its operations that could result from petitioning for Chapter 11 relief.

11. I have reviewed and am generally familiar with the contents of each of the Initial Motions as hereinafter described. With the assistance of the legal explanations provided to me by my legal counsel, the relief sought in each of the Initial Motions is necessary to enable the Debtor to operate in its Chapter 11 Case with minimal disruption and loss of value, and further must be approved on an emergency basis in order to avoid immediate and irreparable harm to the Debtor's Businesses.

**B. Designation of Responsible Person.**

12. I have been the Debtor's 100% owner and officer since I formed the company in July of 2020, and work at its Business on a daily basis. Accordingly, I am readily familiar with the Debtor's finances and operations. Additionally, the Debtor's seeks to appoint me as the Debtor's designated responsible person in this Chapter 11 Case, and this Motion seeks to implement the foregoing. Accordingly, I am suitable for serving as a designated responsible person for the Debtor's in its Chapter 11 Case, and my service as such is necessary and appropriate.

**C. Money Management.**

13. To manage its business efficiently and seamlessly, the Debtor utilizes a money management system (the "Money Management System") to collect and transfer funds generated by its operations and disburse those funds to satisfy the obligations required to operate its business. The Debtor proposes to maintain control over the administration of its Bank Accounts and at the Bank indicated herein.

14. In the ordinary course of business prior to the Petition Date, the Debtor used the

Money Management System, which is similar to those utilized by other companies, to collect, transfer, and distribute funds generated by Debtor's business operations efficiently. In the ordinary course of business, the Debtor accurately recorded such collections, transfers, and disbursements as they were made. Currently, Debtor has two (2) accounts through which payments made through credit card companies and/or collections, transfers, and disbursements are processed. Given the existing Money Management System and the confusion and inefficiency that would be caused by trying to change it, the Debtor has determined to continue its pre-petition money management practices in the post-petition period to a large extent. The Debtor's money Management System constitutes ordinary course, essential business practices providing significant benefits to Debtor including, *inter alia*, the ability to (i) control corporate funds, (ii) ensure the availability of funds when necessary, and (iii) reduce costs and administrative expenses by facilitating the movement of funds and the development of more timely and accurate account balance information. Any disruption of the Money Management System could have a severe and adverse impact upon Debtor's value and reorganization effort.

15. The Debtor will maintain its books and records relating to the Money Management System to the same extent the books and records were maintained before the Petition Date. In this way, all transfers and transactions will be properly documented, and accurate balances will be maintained. As a result, the Debtor will be able to accurately document and record the transactions occurring within the Money Management System for the benefit of all parties in interest. Based on the foregoing, the Debtor believes that maintenance of the existing Money Management System is in the best interests of its estate, and all creditors and parties in interest. Therefore, the Debtor seeks authority to maintain and use its Money Management System during its Chapter 11 Case.

16. By preserving business continuity and avoiding disruption and delay to the Debtor's disbursement obligations, including payroll, that would necessarily result from closing

the Bank Accounts and opening new accounts, all parties in interest, including employees, vendors, and customers, will be best-served. The confusion that would otherwise result, absent the relief requested herein, would ill-serve Debtor's rehabilitative efforts. Accordingly, the Debtor requests authority to maintain the Bank Accounts in the ordinary course of business, to continue utilizing the Money Management System to manage money in a manner consistent with pre-petition practices, and to pay any ordinary course bank fees that may be incurred in connection with the Bank Accounts or any other new bank account that may be opened pursuant to an order of this Court following the Petition Date.

17. If the Debtor is not permitted to maintain and utilize its current Bank Accounts and its existing check stock, the resultant prejudice will include significant (i) disruption to the Debtor's ordinary financial affairs and business operations, (ii) delay in the administration of Debtor's estate, and (iii) cost to the estate to set up new systems, open new accounts, print new business forms, and print new checks.

**D. Utilities.**

18. In the ordinary course of operating the Debtor's Businesses, the Debtor incurs utility expenses (within the meaning of section 366 of the Bankruptcy Code) for power (NV Energy), telephone/internet (Cox,), and waste/recycling (Western Elite), (collectively, the "Utility Providers").

19. On average, the Debtor's Businesses expend approximately $997.00 in the aggregate and on average each month on utility costs. As of the Petition Date, the Debtor is current on its obligations NV Energy, Cox and Western Elite except for current accrued amounts that have not been billed as of yet in the middle of the applicable billing cycle.

20. Preserving utility services on an uninterrupted basis is essential to the Debtor's ongoing operations and, therefore, to the success of its reorganization. Any interruption of utility

services, even for a brief period of time, would disrupt the Debtor's ability to continue maintaining its Businesses, thereby negatively affecting customer relationships, revenues and profits. Such a result could jeopardize the Debtor's reorganization efforts and, ultimately, value and creditor recoveries. It is therefore critical that utility services continue uninterrupted during the Chapter 11 Case.

21. The Debtor intends to pay its post-petition utility obligations owed to the Utility Providers in a timely manner and keep them current on a go forward basis from and after the Petition Date. The Debtor expects that it will have access to such funds from operations to pay post-petition obligations to the Utility Providers. Given the relatively minor monthly obligations usually owing to Utility Providers as compared with the Debtor's money flow generated from operations, and the long account history spanning several years without issues, the Debtor asserts that there is no need to provide any additional assurance of payment for future services to the Utility Providers.

22. The proposed Procedures are necessary for the Debtor to carry out its reorganization efforts. If such Procedures are not approved, the Debtor could be forced to address a volume of requests by its Utility Providers during the critical first weeks of its reorganization. Moreover, the Debtor could be blindsided by a Utility Provider unilaterally deciding on or after the 30th day following the Petition Date that it is not adequately protected and discontinuing service or making an exorbitant demand for payment to continue service. Discontinuation of utility service would force operations to cease, and such disruption of operations could place the Debtor's reorganization efforts in jeopardy.

23. The relief requested herein is in the best interests of the Debtor's estate, as it will have little economic impact on Debtor's creditors, will allow the Debtor to generate additional revenue that would not otherwise be available, while also preserving for the creditors invaluable customer goodwill. It is necessary that this Court grant the relief requested herein to facilitate

continued operation of Debtor's business. The importance of Debtor's customer loyalty to continue booking business is absolutely critical to the reorganization.

**E. Pay Wages**

24. As of the Petition Date, the Debtor employs approximately sixteen (16) employees (collectively, the "Employees"), all of which are full-time employees in the ordinary course of its business whose continued service is vital to Debtor's ongoing operations and reorganization efforts. As of the Petition Date, no unpaid sums were owed to the Employees for pre-petition compensation incurred in the ordinary course of the Debtor's business and operations (collectively, the "Wage Obligations").

25. The Debtor seeks authorization to continue to pay Wage Obligations in the ordinary course of business as they become due in the post-petition period. The Debtor is required by law to withhold from the Employees' wages amounts related to federal and state income taxes, as well as social security and Medicare taxes, and to remit the same to the appropriate taxing authorities. The Debtor seeks authorization to continue to deduct these funds and pay them to such governmental entities in the ordinary course of business.

26. In addition, the Debtor is required to make matching payments from its own funds on account of social security and Medicare taxes, and to pay, based on a percentage of gross payroll, additional amounts to the taxing authorities for state and federal unemployment insurance. The Debtor seeks authorization to continue to pay these funds to the applicable authorities in the ordinary course of business.

27. In the ordinary course of its business, the Debtor does accrue amounts for contributions to health and benefit programs or voluntary insurance plans, pertaining to services rendered by the Employees (collectively, the "Employee Benefit Plans"). These benefits include health plans (i.e., medical, dental, vision, and life insurance), various welfare plans (i.e., life insurance, disability

insurances, accidental death and dismemberment insurance), and other employee assistance programs.

28. Under the laws of the State of Nevada, the Debtor is required to maintain workers' compensation insurance to provide their Employees with coverage for claims arising from or related to their employment with the Debtor. The Debtor currently maintains an annual workers' compensation policy (the "Workers' Comp Policy") pursuant to which it provides workers' compensation insurance coverage. As of the Petition Date, the Debtor's Workers' Comp Policy is active and the Debtor hereby seeks authority to maintain its Workers' Comp Policy in accordance with applicable law post-petition and to pay all premium installments as they come due in the ordinary course of business.

29. If the Debtor is unable to take the necessary steps to ensure that wages and taxes are paid timely, there is a significant risk that essential Employees will resign. As such, continued payment of Wage Obligations, Workers' Comp Policy, and other employee-related matters is essential to maintain positive relations between the Debtor and its Employees, as well as to comply with applicable state law. If the relief requested herein is not granted, the success of the Debtor's ongoing operations and reorganization will be placed in substantial jeopardy, and the Debtor will likely be in violation of various state laws. The relief requested herein is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest. I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

**F. Motion to Assume Lease**

30. The Debtor is party to a lease agreement (the "Lease") with MEOW LLC, a Nevada Limited Liability Company, having an address at 195 E Reno Ave #A, Las Vegas, NV 89119 (the "Landlord"), as lessor, and the Debtor, as lessee. The Lease covers the premises located at 6255

McCleod Dr. #20 & 20, Las Vegas, NV 89120 (the "Premises"), which serves as the Debtor's primary place of business and operations facility.

31. The Lease was executed on May 20, 2025, with the current term expiring July 31, 2025 and renewing on August 1, 2025, for a period of sixty (60) months, expiring on July 31, 2030. The monthly rent is structured with annual escalations as follows: Year 1 (August 1, 2025 - July 31, 2026): $6,182.00 per month; Year 2 (August 1, 2026 - July 31, 2027): $6,491.00 per month; Year 3 (August 1, 2027 - July 31, 2028): $6,816.00 per month; Year 4 (August 1, 2028 - July 31, 2029): $7,156.00 per month; and Year 5 (August 1, 2029 - July 31, 2030): Base rent plus additional rent of $115.00 per month for utilities provided to the premises. The Lease requires a security deposit in the amount of $7,514.00, which has been paid to the Landlord.

32. The Premises are essential to the Debtor's business operations, serving as the location for the Debtor's glass fabrication, storage, and administrative functions. To the best of the Debtor's knowledge, the Debtor is current on all obligations under the Lease as of the Petition Date, and there are no monetary defaults requiring cure. The Debtor has not received any notice of default from the Landlord prior to or since the Petition Date.

33. The assumption of the Lease is essential to the Debtor's continued operations and successful reorganization. The Premises serve as the Debtor's primary business location and contain specialized equipment and facilities necessary for glass fabrication and installation services. The Premises are strategically located to serve the Debtor's customer base throughout Las Vegas, Nevada, and relocation would result in significant disruption to operations, substantial moving costs, and potential loss of customers.

34. The rental rates under the Lease are reasonable and competitive for similar commercial space in the Las Vegas market suitable for the Debtor's specialized operations. The escalating rent structure provides predictability for the Debtor's business planning and reorganization efforts. Assumption of the Lease will allow the Debtor to maintain business continuity, preserve jobs,

and maximize value for all stakeholders during the reorganization process. The Debtor has the financial ability to perform its obligations under the Lease going forward, including the annual rent escalations and utility charges, and can provide adequate assurance of future performance. I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

    I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

DATED: July 16th, 2025.

_____
*Vincent Regala*

## CERTIFICATE OF SERVICE

On the 16th day of July, 2025 I served the following document(s):

***OMNIBUS DECLARATION OF VINCENT REGALA IN SUPPORT
OF FIRST DAY MOTIONS AND RELATED RELIEF***

I served the above-named document(s) by depositing a true and complete copy of the above named document(s), first class postage paid into the United States Mail, via US Mail to the following persons as listed In the attached Matrix.

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED this 16th day of July, 2025.

| Melissa Milroy | /s/ Melissa Milroy |
|---|---|
| **(Name of Declarant)** | **(Signature of Declarant)** |

```
Label Matrix for local noticing          VEGAS CUSTOM GLASS, LLC                  United States Bankruptcy Court
0978-2                                   6255 MCLEOD DR. STE 21                   300 Las Vegas Blvd., South
Case 25-13929-mkn                        LAS VEGAS, NV 89120-4075                 Las Vegas, NV 89101-5833
District of Nevada
Las Vegas
Wed Jul 16 15:03:45 PDT 2025

Ally Financial                           Ally Financial                           Alo Capital Group
500 Woodward Ave                         Acct No xxx-xxxx-x4879                   18851 NE 29th Ave
Detroit, MI 48226-3416                   500 Woodward Ave                         Miami, FL 33180-2847
                                         Detroit, MI 48226-3416

Bank of America                          Bank of America                          Beacon Sales Acquisition Inc. dba QXO/Waterp
Acct No xxxx xxxx xxxx 0041              Acct No xxxx xxxx xxxx 0099              505 Huntmar Park Dr.
PO Box 25118                             PO Box 25118                             Herndon, VA 20170-5103
Tampa, FL 33622-5118                     Tampa, FL 33622-5118

Boyd Martin Construction                 C.R. Laurence Co Inc                     Christensen James and Martin CHTD
5965 McLeod Dr                           2503 E Vernon Ave                        Acct No xxxxxx5872
Las Vegas, NV 89120-3404                 Los Angeles, CA 90058-1826               7440 W Sahara
                                                                                  Las Vegas, NV 89117-2740

E Financial Tree                         Empire CAT Rental                        Forte Specialty Contractors
201 Broad St Suite 1002                  3300 St Rose Pkwy                        3451 W Martin Ave C
Stamford, CT 06901-2004                  Henderson, NV 89052-3985                 Las Vegas, NV 89118-4572

Fox Funding                              Glass Supply Inc                         GlassWerks LA Inc
803 S 21st Ave                           2975 S Highland Dr                       8600 Rheem Ave
Hollywood, FL 33020-6962                 Las Vegas, NV 89109-1011                 South Gate, CA 90280-3333

Hammond Caulking                         Howard and Howard                        (p)INTERNAL REVENUE SERVICE
3355 W Lake Mead Blvd #100               The Wells Fargo Tower                    CENTRALIZED INSOLVENCY OPERATIONS
North Las Vegas, NV 89032-4901           3800 Howard Hughes Pkwy                  PO BOX 7346
                                         Las Vegas, NV 89169-0972                 PHILADELPHIA PA 19101-7346

International Window Company             Joe Lieberman, ESQ                       Martin Harris Construction
Acct No x3008                            Lieberman and Klestzick, LLP             3030 S Highland Dr
2455 Wardlow Rd                          PO Box 356                               Las Vegas, NV 89109-1047
Corona, CA 92878-5191                    Cedarhurst, NY 11516-0356

OFFICE OF THE UNITED STATES TRUSTEE      PWI Construction Inc                     Quickbridge
ATTN: EDWARD M. MCDONALD JR.             3902 W Martin Ave                        Acct No xxx-xxxxx5-02-6
300 LAS VEGAS BLVD. SOUTH, SUITE 4300    Las Vegas, NV 89118                      46 Discovery Suite 200
LAS VEGAS, NV 89101-5803                                                          Irvine, CA 92618-3123

Quickbridge                              Quickbridge                              School Guard Glass
Acct No xxx-xxxxx5-02-7                  Acct No xxx-xxxxx5-02-8                  Acct No xx0635
46 Discovery Suite 200                   46 Discovery Suite 200                   14 Federico Drive
Irvine, CA 92618-3123                    Irvine, CA 92618-3123                    Pittsfield, MA 01201-5518
```

| | | |
|---|---|---|
| Smalley & Company<br>5295 Procyon St #100<br>Las Vegas, NV 89118-1676 | Southern Nevada Glaziers and Fabricators<br>Acct No xxxxxx5872<br>PO Box 400608<br>Las Vegas, NV 89140-0608 | Stanley Doors<br>65 Scott Swamp Road<br>Farmington, CT 06032-2803 |
| U.S. TRUSTEE - LV - 11<br>300 LAS VEGAS BOULEVARD S.<br>SUITE 4300<br>LAS VEGAS, NV 89101-5803 | Vegas Remodels<br>1620 Raiders Way Suite 130<br>Henderson, NV 89052-4631 | Vincent Regala<br>3750 Salt Cedar Ln<br>Las Vegas, NV 89121-5932 |
| BRIAN D. SHAPIRO<br>510 S. 8TH STREET<br>LAS VEGAS, NV 89101-7003 | JAMES T. LEAVITT<br>LEAVITT LEGAL SERVICES, P.C.<br>601 SOUTH 6TH STREET<br>LAS VEGAS, NV 89101-6919 | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Service
Ogden, UT 84201

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Blusky Restoration Contractors | (u)Builders United | (u)ES Oasis LLC |
| (u)Grey West Construction | (u)Legay Jones LLC | (u)Monument Construction - 25th |
| (u)Ochoa | (u)PRL | End of Label Matrix<br>Mailable recipients    37<br>Bypassed recipients     8<br>Total                  45 |