**LEAVITT LEGAL SERVICES, P.C.**                    E-Filed on: 7/16/2025
**JAMES T. LEAVITT, ESQ.**
State Bar No. 012803
601 South 6th Street
Las Vegas, Nevada 89101
Phone: (702) 385-7444 Facsimile: (702) 385-1178
Jamestleavittesq@gmail.com, Leavittecf@gmail.com
Proposed Attorney for Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: ) | BK-24-13929-mkn |
| ) | Chapter 11, Subchapter V |
| VEGAS CUSTOM GLASS LLC., ) | |
| ) | Date: August 20, 2025 |
| ) | Time: 9:30 a.m. |
| ) | Teleconference line: (833 435-1820 |
| DEBTOR. ) | Meeting ID: 161 062 2560 |
| _____) | Pass code: 029066# |

**DEBTOR'S MOTION FOR AUTHORIZATION TO: (i) CONTINUE USING EXISTING MONEY MANAGEMENT SYSTEM, AS MODIFIED, (ii) TO HONOR CERTAIN PREPETITION OBLIGATIONS RELATED TO THE USE OF THE MONEY MANAGEMENT SYSTEM, AND (iii) MAINTAIN EXISTING BANK ACCOUNTS (IV) AUTHORITY TO PAY ALL VENDORS, SUPPLIERS, AND SERVICE PROVIDERS ON A CASH BASIS FOR POST-PETITION OBLIGATIONS, AND (V) AUTHORITY TO USE ACCOUNTS RECEIVABLE COLLECTED DURING THE CHAPTER 11 PROCEEDINGS TO FUND PAYMENTS UNDER THE DEBTOR'S CHAPTER 11 PLAN**

VEGAS CUSTOM GLASS LLC., as debtor and debtor in possession (the "Debtor" or "VCG"), submits its motion (the "Motion") pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") seeking authorization (i) to continue using its existing money management system, as modified pre-petition, and (ii) honor certain pre-petition obligations related to the use of the money management system (iii) maintain existing bank accounts (iv) authority to pay all vendors, suppliers, and service providers on a cash basis for post-petition obligations, and (v) authority to use accounts receivable collected during the chapter 11 proceedings to fund payments under the debtor's chapter 11 plan. This Motion is made and based on the points and authorities herein, the *Omnibus Declaration of Vincent Regala in*

*Support of Chapter 11 Petition, Initial Motions, and Related Relief* (the "Omnibus Declaration"),
the papers and pleadings on file herein, judicial notice of which are requested, and any arguments
of counsel made at the hearing on the Motion.

## I. Introduction

1. Vegas Custom Glass, LLC (the "Debtor" or "VCG") is a specialized glass fabrication
and installation company that provides custom glass solutions to both commercial and residential
clients. The Debtor's operations include the design, fabrication, and installation of various glass
products and systems, serving a diverse customer base throughout Las Vegas, Nevada.

2. Vegas Custom Glass, LLC, a specialized glass fabrication and installation company
serving Las Vegas, Nevada, filed for Chapter 11 bankruptcy protection due to a perfect storm of
financial pressures that created an unsustainable liquidity crisis. The company faced substantial
increases in material costs, labor expenses, and overhead driven by industry-wide supply chain
disruptions and inflation, which outpaced their ability to adjust pricing on existing contracts and
created negative margin pressure. These operational challenges were compounded by significant
delays in collecting accounts receivable from commercial construction projects, with extended
payment cycles that exceeded historical collection experience and created severe working capital
strain. The combination of compressed margins and delayed collections rendered the company
unable to maintain regular debt service payments, particularly the weekly remittance
requirements on outstanding loans, ultimately forcing management to seek Chapter 11 protection
under Subchapter V as the most effective framework to restructure debt obligations, improve
operational efficiency, and preserve ongoing business operations while emerging as a stronger,
more sustainable enterprise.

## II. Jurisdiction and Venue

3. On July 9, 2025 (the "Petition Date"), the Debtor filed its voluntary petition for
relief under chapter 11 of the Bankruptcy Code, thereby commencing its bankruptcy case (the

"Chapter 11 Case"). The Debtor has elected to be treated under Subchapter V of chapter 11 of the Bankruptcy Code, and thus the Debtor is authorized to continue operating its business as a debtor in possession pursuant to section 1184 of the Bankruptcy Code.

4. The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to LR 9014.2, the Debtor consents to the entry of final orders and judgments by the bankruptcy judge. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

### III. Relief Requested

5. To manage its business efficiently and seamlessly, the Debtor utilizes a credit card/merchant system (the "Money Management System") to collect and transfer funds generated by its operations and disburse those funds to satisfy the obligations required to operate its business.

6. By this Motion, pursuant to sections 105(a), 363(b), 363(c)(1), and 364(a) of the Bankruptcy Code, Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and LR 4001(e), Debtor requests (i) authority to continue to operate the Money Management System, including to fund the operations of Debtor in the ordinary course of business, consistent with its pre-petition practices, as modified herein, (ii) authority to honor certain pre-petition obligations related to the use of the Money Management System, and (iii) authority to maintain existing business forms.

### IV. Statement of Facts

7. In the ordinary course of business prior to the Petition Date, the Debtor used the Money Management System, which is similar to those utilized by other companies, to collect, transfer, and distribute funds generated by Debtor's business operations efficiently. In the ordinary course of business, the Debtor accurately recorded such collections, transfers, and

disbursements as they were made. Currently, the Debtor has two (2) financial accounts with one institution as follows: Bank of America including; one (1) operating account and one (1) saving account.

8. The Debtor has been advised that it would take a substantial amount of time to obtain a new merchant account. Hence, if the Debtor is not permitted to continue to use the merchant account as debtor-in-possession, it could not offer its customers the service of allowing them to pay its bills by credit card for whatever period of time it would take for Debtor to obtain new a merchant account. The absence of credit card services even for a short period of time would materially and adversely affect Debtor's business. As of the Petition Date, customer drafts relating to such credit cards were in various stages of collection. To obviate the disruption that might otherwise occur in the collection process, it is in the best interest of the estates to be authorized to continue to its ordinary course credit card transactions, rather than to close this account and then open a new account.

9. Given the confusion and inefficiency that would be caused by trying to change it, the Debtor has determined to continue its pre-petition money management practices in the post-petition period to a large extent. Debtor's Money Management System constitutes ordinary course, essential business practices providing significant benefits to Debtor including, *inter alia*, the ability to (i) control corporate funds, (ii) ensure the availability of funds when necessary, and (iii) reduce costs and administrative expenses by facilitating the movement of funds and the development of more timely and accurate account balance information. Any disruption of the Money Management System could have a severe and adverse impact upon Debtor's value.

10. The Debtor will maintain its books and records relating to the Money Management System to the same extent the books and records were maintained before the Petition Date. In this way, all transfers and transactions will be properly documented, and accurate balances will be maintained. As a result, the Debtor will be able to accurately document and record the

transactions occurring within the Money Management System for the benefit of all parties in interest. Based on the foregoing, the Debtor believes that maintenance of the existing Money Management System is in the best interests of its estate, and all creditors and parties in interest. Therefore, the Debtor seeks authority to maintain and use its Money Management System during its Chapter 11 Case.

**V. Legal Authority**

**A. General Authorities.**

11. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in the ordinary course transactions required to operate its business without unneeded oversight by their creditors or the court. See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 384 (2d Cir. 1997); In re Enron Corp., No. 01-16034 (ALG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003); Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.), 207 B.R. 406, 409 (S.D.N.Y. 1997). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's money management system. See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.), 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtor seeks authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, and disbursement, including inter company transfers, of cash pursuant to its Money Management System described above.

12. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "Where the debtor articulates a

reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). When a valid business justification exists, the law vests the debtor's decision to use property out of the ordinary course of business with a strong presumption that "'in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

13. The Bankruptcy Code also provides a debtor in possession the freedom to obtain unsecured credit and incur unsecured debt in the ordinary course of business without notice and hearing. 11 U.S.C. § 364(a); see In re Amdura Corp., 75 F.3d at 1453; LNC Inv., Inc. v. First Fidelity Bank, 247 B.R. 38, 45 (S.D.N.Y. 2000); Mulligan v. Sobiech, 131 B.R. 917, 921 (S.D.N.Y. 1991). Debtor seeks authorization, to the extent necessary, to obtain unsecured credit and incur unsecured debt in the ordinary operation of its Money Management System.

14. The Court may exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing the Money Management System is vital to the efficient and economic administration ofits chapter 11 case, and the automatic transfers are necessary to allow meaningful use of the Money Management System. Therefore, it is within the Court's equitable power under section 105(a) to approve the continued use of the Money Management System, as modified herein.

15. Finally, these procedures are similar to those employed by comparable corporate enterprises, and thus the relief requested herein is routinely granted in other chapter 11 cases, and

such authorization is appropriate in this Chapter 11 Case as well.

**B. The Need to Honor Pre-petition Obligations Related to Money Management System.**

16. In connection with its use of the Money Management System, the Debtor incurs periodic service charges and other fees to the Banks for the maintenance of the Money Management System (the "Service Charges"). The Debtor is unaware of any unpaid pre-petition Service Charges as of the Petition Date. However, out of abundance of caution, the Debtor hereby requests authority to pay the pre-petition Service Charges, if any, that remain unpaid as of the Petition Date. Payment of the pre-petition Services Charges is in the best interests of the Debtor, its estate and all parties in interest as it will prevent any disruption to the Money Management System. Because the Banks have setoff rights with respect to the Service Charges, payment of any pre-petition Service Charges would not affect unsecured creditors and the issue of paying any pre-petition Service Charges would just be a matter of timing.

17. Accordingly, by this Motion, the Debtor seeks authority pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 to pay, at Debtor's sole discretion, the pre-petition Service Charges, if any. Based on the foregoing, Bankruptcy Rule 6003 has been satisfied. Furthermore, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**C. The Need to Maintain Debtor's Existing Bank Accounts and Business Forms.**

18. As part of the Money Management System, the Debtor maintains four Bank Accounts. Debtor routinely deposits and withdraws funds from the Bank Account by checks, wire transfers, and automated clearinghouse transfers. Rigid adherence to the U.S. Trustee's "Operating Guidelines and Reporting Requirements For Debtors in Possession and Trustees" (the "Guidelines") would require, as of the Petition Date, the closure of Debtor's pre-petition bank accounts, the opening of new accounts, and the immediate printing of new checks with a

"Debtor in Possession" designation on them. The Debtor believes, however, that its transition to chapter 11 will be smoother, less costly, and more orderly, and disruption and harm to its Money Management System will be minimized, if the Bank Accounts are continued following the commencement of its case with the same account numbers; *provided*, *however*, that checks issued or dated prior to the Petition Date will not be honored absent a prior order of the Court.

19. Unless otherwise ordered by this Court, no Banks shall honor or pay any check issued on account of a pre-petition claim. Any bank may honor any checks issued on account of pre-petition claims only where this Court has specifically authorized such checks to be honored. Furthermore, notwithstanding anything to the contrary in any other emergency and interim order or other order of this Court, the Debtor requests that the Banks be authorized to accept and honor all representations from the Debtor as to which checks should be honored or dishonored consistent with any order(s) of this Court, whether or not the checks are dated prior to, on, or subsequent to the Petition Date. The Debtor further requests that the Banks should not be liable to any party for following the Debtor's instructions or representations regarding which checks should be honored.

20. By preserving business continuity and avoiding disruption and delay to Debtor's disbursement obligations, including payroll, that would necessarily result from closing the Bank Account and opening new accounts, all parties in interest, including employees, vendors, and customers, will be best-served. The confusion that would otherwise result, absent the relief requested herein, would ill-serve Debtor's rehabilitative efforts.

21. Accordingly, the Debtor requests authority to maintain the Bank Account in the ordinary course of business, to continue utilizing the Money Management System to manage cash in a manner consistent with pre-petition practices, and to pay any ordinary course bank fees that may be incurred in connection with the Bank Accounts or any other new bank account that may be opened pursuant to an order of this Court following the Petition Date.

22. In addition, to minimize expenses, Debtor further requests that it be authorized to continue to use its correspondence and business forms, including, but not limited to, purchase orders, checks, and other business forms (collectively, the "Business Forms"), substantially in the forms existing immediately before the Petition Date, without reference to its status as debtor in possession. Because all of the Debtor's payments were made out of its bank accounts at the Banks, to the extent they use those bank accounts for payroll and vendor payments, it is requesting to continue to use such check stock; *provided, however*, that the Debtor shall commence marking "Debtor in Possession" and the chapter 11 case number on its own existing check stock and wire transfer instructions instead of having new stock printed with such marking.

23. If the Debtor is not permitted to maintain and utilize its current Bank Account and its existing Business Forms, including check stock, the resultant prejudice will include significant (i) disruption to the Debtor's ordinary financial affairs and business operations, (ii)delay in the administration of Debtor's estate, and (iii) cost to the estate to set up new systems, open new accounts, print new business forms, and print new checks.

**D. Authority to Pay Vendors on a Cash Basis**

24. To maintain essential business operations and prevent disruption to ongoing projects, the Debtor seeks authority to pay all vendors, suppliers, and service providers on a cash basis going forward. This cash-only payment arrangement will ensure continued access to  materials, services, and trade support necessary for the Debtor's operations during the Chapter 11 proceedings.

25. Operating on a cash basis with vendors will prevent the accumulation of additional unsecured debt and will provide transparency in the Debtor's financial dealings. This approach is consistent with the Debtor's goal of maintaining business continuity while avoiding the creation of additional administrative claims that could complicate the reorganization process.

26. The Debtor believes that establishing and maintaining positive vendor relationships through prompt cash payments will be critical to preserving the business's operational capacity and supporting the successful implementation of its Chapter 11 plan. Many vendors in the glass fabrication and construction industry require prompt payment to maintain supply relationships, and cash-based transactions will help ensure uninterrupted service.

27. Accordingly, the Debtor requests authority pursuant to sections 105(a) and 363(b) of the  Bankruptcy Code to pay all post-petition vendor obligations on a cash basis, including but not limited to payments for materials, supplies, subcontractor services, and other goods and services necessary for the ordinary course operation of the Debtor's business.

**E. Secured Claims on Accounts Receivable**

28. The Debtor acknowledges that certain creditors hold secured claims against the Debtor's accounts receivable. Specifically, the following entities have asserted secured claims against the Debtor's accounts receivable: (i) Ally Financial; (ii) Alo Capital Group; (iii) E Financial Tree; (iv) Fox Funding; (v) Quickbridge; and (vi) Southern Nevada Glaziersand Fabricators (collectively, the "Secured Creditors").

29. The Debtor believes that these Secured Creditors may have valid and enforceable security interests in the Debtor's accounts receivable, whether arising from financing agreements, factoring arrangements, or other secured transactions entered into prior to the Petition Date. The Debtor recognizes that any use of accounts receivable during the Chapter 11 proceedings must be conducted in accordance with the rights of these Secured Creditors.

30. Nothing in this Motion is intended to impair, limit, or otherwise adversely affect the rights of the Secured Creditors in their respective collateral, including but not limited to their security interests in the Debtor's accounts receivable. The Debtor acknowledges that any collection or use of accounts receivable that constitute collateral for the Secured Creditors must

- 10 -

comply with the automatic stay provisions of section 362 of the Bankruptcy Code and the adequate protection requirements of section 361 of the Bankruptcy Code.

31. The Debtor reserves all rights to challenge the validity, enforce-ability, perfection, or priority of any claimed security interest in the accounts receivable, and nothing in this Motion shall constitute an admission regarding the validity or extent of any such security interest. Similarly, the Secured Creditors reserve all rights with respect to their claimed security interests.

32. To the extent that any use of accounts receivable pursuant to this Motion may require the consent of or notice to the Secured Creditors, or may require adequate protection payments or other safeguards for the Secured Creditors' interests, the Debtor will work cooperatively with the Secured Creditors to address such requirements in compliance with applicable law.

33. The Debtor further acknowledges that any authority granted herein to use accounts receivable is subject to any prior or superior rights of the Secured Creditors and shall not prejudice any rights of the Secured Creditors to seek adequate protection, to object to the use of cash collateral, or to seek relief from the automatic stay as may be appropriate under the circumstances.

### F. Use of Accounts Receivable to Fund Chapter 11 Plan

34. Subject to the rights of the Secured Creditors as described above, the Debtor seeks authority to use accounts receivable collected during the Chapter 11 proceedings to fund payments under its proposed Chapter 11 plan. The Debtor's business model relies heavily on the collection of accounts receivable from completed projects, and these collections represent a primary source of cash flow for the reorganized entity.

35. Given the nature of the Debtor's business in the commercial and residential glass installation industry, accounts receivable typically represent the largest component of the Debtor's liquid assets. The timing and amount of these collections are essential to the Debtor's ability to make plan payments and maintain operations during the plan period.

36. The Debtor anticipates that accounts receivable collections will provide a stable and predictable source of funding for plan payments, as these receivables are based on completed work and established contractual obligations. The Debtor has historically maintained strong collection practices and expects to continue these practices during the Chapter 11 proceedings.

37. Authorization to use accounts receivable for plan funding is essential to the feasibility of the Debtor's reorganization. Without this authority, the Debtor may be unable to demonstrate adequate funding sources for its proposed plan, which could jeopardize the successful completion of the Chapter 11 proceedings.

38. Accordingly, the Debtor requests authority pursuant to sections 105(a), 363(b), and 1191 of the Bankruptcy Code to use accounts receivable collected during the Chapter 11 proceedings to fund payments under its Chapter 11 plan, including but not limited to payments to creditors, administrative expenses, and other obligations arising under the confirmed plan, subject to the rights of the Secured Creditors and any requirements for adequate protection or other safeguards that may be necessary to protect such rights.

## VI. Conclusion

WHEREFORE, the Debtor requests that the Court enter an order granting the Debtor (i) the authority to continue to operate the Money Management System, including to fund the operations of the Debtor in the ordinary course of business, consistent with its pre-petition practices, as modified herein, (ii) the authority to honor certain pre-petition obligations related to the use of the Money Management System as set forth herein, (iii) authority to maintain existing business forms, including checks, (iv) authority to pay all vendors, suppliers, and service providers on a cash basis for post-petition obligations, and (v) authority to use accounts receivable collected during the Chapter 11 proceedings to fund payments under the Debtor's Chapter 11 plan, subject to the rights of the Secured Creditors and any adequate protection

requirements. The Debtor asks that these permissions include all use since the date of the filing of the petition for relief. The Debtor also requests such other and further relief as just and proper.

DATED this 16th day of July, 2025.            Submitted by:

LEAVITT LEGAL SERVICES, P.C.

By: *James T. Leavitt*
    James T. Leavitt, Esq.
    Leavitt Legal Services, P.C.
    601 S. Sixth Street
    Las Vegas NV 89101
    Proposed Attorney for Debtor-in-Possession

# EXHIBIT A

# EXHIBIT A

Sheet1

July 2025

| Expense | Category | Budget |
|---|---|---|
| Advertising | Operating | $1,000.00 |
| Benefits non-union | Operating | $1,000.00 |
| Supplies | Operating | $700.00 |
| Rent/Mortgage | Operating | $9,591.00 |
| Sales Expenses | Operating | $50,000.00 |
| Taxes – 941 | Operating | $2,000.00 |
| Utilities | Operating | $700.00 |
| Union Package | Operating | $25,000.00 |
| Insurance | Operating | $16,994.43 |
| Telephone | Operating | $320.00 |
| Legal Fees | Operating | $650.00 |
| Maintanance/Repairs | Operating | $1,000.00 |
| Payroll | Operating | $75,000.00 |
| | | $183,955.43 |

**LEAVITT LEGAL SERVICES, P.C.**
**JAMES T. LEAVITT, ESQ.**
State Bar No. 012803
601 South 6th Street
Las Vegas, Nevada 89101
Phone: (702) 385-7444 Facsimile: (702) 385-1178
Jamestleavittesq@gmail.com, Leavittecf@gmail.com
Proposed Attorney for Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | BK-24-12701-mkn |
| | Chapter 11, Subchapter V |
| VEGAS CUSTOM GLASS LLC., | |
| | Date: August 20, 2025 |
| | Time: 9:30 a.m. |
| DEBTOR. | |

**PROPOSED ORDER GRANTING DEBTOR'S MOTION FOR AUTHORIZATION TO: (i) CONTINUEUSING EXISTING MONEY MANAGEMENT SYSTEM, AS MODIFIED, (ii) TO HONOR CERTAIN PREPETITION OBLIGATIONS RELATED TO THE USE OF THE MONEY MANAGEMENT SYSTEM, AND (iii) MAINTAIN EXISTING BANK ACCOUNTS (IV) AUTHORITY TO PAY ALL VENDORS, SUPPLIERS, AND SERVICE PROVIDERS ON A CASH BASIS FOR POST-PETITION OBLIGATIONS, AND (V) AUTHORITY TO USE ACCOUNTS RECEIVABLE COLLECTED DURING THE CHAPTER 11 PROCEEDINGS TO FUND PAYMENTS UNDER THE DEBTOR'S CHAPTER 11 PLAN.**

Vegas Custom Glass LLC., as debtor and debtor in-possession (the "Debtor"), by and through its counsel, James T. Leavitt Esq., having submitted its Motion: For Authorization to (i) Continue Using its Existing Money Management System, as Modified Pre-petition, and (ii) Honor Certain Pre-petition Obligations Related to the use of the Money Management System and (iii) Maintain Existing Bank Accounts (iv) Authority To Pay All Vendors, Suppliers, And Service Providers On A Cash Basis For Post-Petition Obligations, And (v) Authority To Use Accounts Receivable Collected During The Chapter 11 Proceedings To Fund Payments Under The Debtor's Chapter 11 Plan. (the "Motion") [ECF No.___]; the Court having reviewed and

– 15

considered the Motion; the Motion having come on for hearing before the above-captioned Court on the – day of ____, 2025 at _:__ _.m., all appearances having been noted on the record; the Court having made its findings of fact and conclusions of law on the record at the hearing, which are incorporated herein pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable pursuant to Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure; it appearing that the relief requested is necessary to preserve the Debtor's ongoing operations, and is in the best interest of the Debtor's estates, creditors, and all parties-in-interest; and good cause appearing therefore,

**IT IS HEREBY ORDERED:**

1. The Motion is GRANTED.

2. Debtor will designate its existing US Bank Account(s) as a debtor-in-possession ("DIP") account with in thirty (30) days from the date this Order is entered and any other bank account opened post-petition by the Debtor will be designated as DIP account.

3. Debtor is authorized and empowered to: a) maintain its Money Management System and continue to use its Bank Account for all purposes as debtor in possession accounts; b) use, in their present form, existing checks and other documents related to the Bank Accounts; c) pay post-petition ordinary course bank fees in connection with the Bank Accounts; d) perform their obligations under the documents and agreements governing the Bank Accounts. e) pay all vendors, suppliers, and service providers on a cash basis for post-petition obligations; and f) use accounts receivable collected during the chapter 11 proceedings to fund payments under the Debtor's Chapter 11 Plan.

4. Bank of America, at which Debtor maintains two Bank Accounts (operating account and saving account), is authorized and directed to: (i) continue to administer, service, and

maintain the Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the usual and ordinary course; and (ii) to pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "Debits") on account of a claim arising on or after the Petition Date, so long as there are sufficient collected funds in the relevant Bank Accounts and in accordance with merchant service agreements, if applicable.

5. Nothing in this Order shall impair, limit, or otherwise adversely affect the rights of the Secured Creditors (Ally Financial, Alo Capital Group, E Financial Tree, Fox Funding, Quickbridge, and Southern Nevada Glaziers and Fabricators) in their respective collateral, including but not limited to their security interests in the Debtor's accounts receivable.

6. The Debtor's authority to use accounts receivable pursuant to this Order is subject to any prior or superior rights of the Secured Creditors and shall not prejudice any rights of the Secured Creditors to seek adequate protection, to object to the use of cash collateral, or to seek relief from the automatic stay as may be appropriate under the circumstances.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED:

LEAVITT LEGAL SERVICES, P.C.

By: /s/ *James T. Leavitt* _____
JAMES T. LEAVITT, ESQ.
Nevada Bar No. 012803
601 S 6th Street
Las Vegas, Nevada 89101
Attorney for Debtor-in-Possession

### *LR 9021 CERTIFICATION*

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

_____    The court has waived the requirement set forth in LR 9021(b)(1).

_____    No party appeared at the hearing or filed an objection to the motion.

_X_    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above.

_____    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

- 18

## CERTIFICATE OF SERVICE

On the 16th day of July, 2025 I served the following document(s):

***DEBTOR'S MOTION FOR AUTHORIZATION TO: (i) CONTINUE USING EXISTING MONEY MANAGEMENT SYSTEM, AS MODIFIED, (ii) TO HONOR CERTAIN PREPETITION OBLIGATIONS RELATED TO THE USE OF THE MONEY MANAGEMENT SYSTEM, AND (iii) MAINTAIN EXISTING BANK ACCOUNTS (IV) AUTHORITY TO PAY ALL VENDORS, SUPPLIERS, AND SERVICE PROVIDERS ON A CASH BASIS FOR POST-PETITION OBLIGATIONS, AND (V) AUTHORITY TO USE ACCOUNTS RECEIVABLE COLLECTED DURING THE CHAPTER 11 PROCEEDINGS TO FUND PAYMENTS UNDER THE DEBTOR'S CHAPTER 11 PLAN***

I served the above-named document(s) by depositing a true and complete copy of the above named document(s), first class postage paid into the United States Mail, via US Mail to the following persons as listed In the attached Matrix.

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED this 16th day of July, 2025.

Melissa Milroy_____          /s/ Melissa Milroy_____
**(Name of Declarant)**                **(Signature of Declarant)**

– 14

Label Matrix for local noticing
0978-2
Case 25-13929-mkn
District of Nevada
Las Vegas
Wed Jul 16 15:03:45 PDT 2025

VEGAS CUSTOM GLASS, LLC
6255 MCLEOD DR. STE 21
LAS VEGAS, NV 89120-4075

United States Bankruptcy Court
300 Las Vegas Blvd., South
Las Vegas, NV 89101-5833

Ally Financial
500 Woodward Ave
Detroit, MI 48226-3416

Ally Financial
Acct No xxx-xxxx-x4879
500 Woodward Ave
Detroit, MI 48226-3416

Alo Capital Group
18851 NE 29th Ave
Miami, FL 33180-2847

Bank of America
Acct No xxxx xxxx xxxx 0041
PO Box 25118
Tampa, FL 33622-5118

Bank of America
Acct No xxxx xxxx xxxx 0099
PO Box 25118
Tampa, FL 33622-5118

Beacon Sales Acquisition Inc. dba QXO/Waterp
505 Huntmar Park Dr.
Herndon, VA 20170-5103

Boyd Martin Construction
5965 McLeod Dr
Las Vegas, NV 89120-3404

C.R. Laurence Co Inc
2503 E Vernon Ave
Los Angeles, CA 90058-1826

Christensen James and Martin CHTD
Acct No xxxxxx5872
7440 W Sahara
Las Vegas, NV 89117-2740

E Financial Tree
201 Broad St Suite 1002
Stamford, CT 06901-2004

Empire CAT Rental
3300 St Rose Pkwy
Henderson, NV 89052-3985

Forte Specialty Contractors
3451 W Martin Ave C
Las Vegas, NV 89118-4572

Fox Funding
803 S 21st Ave
Hollywood, FL 33020-6962

Glass Supply Inc
2975 S Highland Dr
Las Vegas, NV 89109-1011

GlassWerks LA Inc
8600 Rheem Ave
South Gate, CA 90280-3333

Hammond Caulking
3355 W Lake Mead Blvd #100
North Las Vegas, NV 89032-4901

Howard and Howard
The Wells Fargo Tower
3800 Howard Hughes Pkwy
Las Vegas, NV 89169-0972

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

International Window Company
Acct No x3008
2455 Wardlow Rd
Corona, CA 92878-5191

Joe Lieberman, ESQ
Lieberman and Klestzick, LLP
PO Box 356
Cedarhurst, NY 11516-0356

Martin Harris Construction
3030 S Highland Dr
Las Vegas, NV 89109-1047

OFFICE OF THE UNITED STATES TRUSTEE
ATTN: EDWARD M. MCDONALD JR.
300 LAS VEGAS BLVD. SOUTH, SUITE 4300
LAS VEGAS, NV 89101-5803

PWI Construction Inc
3902 W Martin Ave
Las Vegas, NV 89118

Quickbridge
Acct No xxx-xxxxx5-02-6
46 Discovery Suite 200
Irvine, CA 92618-3123

Quickbridge
Acct No xxx-xxxxx5-02-7
46 Discovery Suite 200
Irvine, CA 92618-3123

Quickbridge
Acct No xxx-xxxxx5-02-8
46 Discovery Suite 200
Irvine, CA 92618-3123

School Guard Glass
Acct No xx0635
14 Federico Drive
Pittsfield, MA 01201-5518

Smalley & Company
5295 Procyon St #100
Las Vegas, NV 89118-1676

Southern Nevada Glaziers and Fabricators
Acct No xxxxxx5872
PO Box 400608
Las Vegas, NV 89140-0608

Stanley Doors
65 Scott Swamp Road
Farmington, CT 06032-2803


U.S. TRUSTEE - LV - 11
300 LAS VEGAS BOULEVARD S.
SUITE 4300
LAS VEGAS, NV 89101-5803

Vegas Remodels
1620 Raiders Way Suite 130
Henderson, NV 89052-4631

Vincent Regala
3750 Salt Cedar Ln
Las Vegas, NV 89121-5932


BRIAN D. SHAPIRO
510 S. 8TH STREET
LAS VEGAS, NV 89101-7003

JAMES T. LEAVITT
LEAVITT LEGAL SERVICES, P.C.
601 SOUTH 6TH STREET
LAS VEGAS, NV 89101-6919


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Internal Revenue Service
Ogden, UT 84201


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Blusky Restoration Contractors

(u)Builders United

(u)ES Oasis LLC


(u)Grey West Construction

(u)Legay Jones LLC

(u)Monument Construction - 25th


(u)Ochoa

(u)PRL

End of Label Matrix
Mailable recipients    37
Bypassed recipients     8
Total                  45