**LEAVITT LEGAL SERVICES, P.C.**  E-Filed on: 8/15/2025
**JAMES T. LEAVITT, ESQ.**
State Bar No. 012803
601 South 6th Street
Las Vegas, Nevada 89101
Phone: (702) 385-7444 Facsimile: (702) 385-1178
Jamestleavittesq@gmail.com, Leavittcf@gmail.com
Proposed Attorney for Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: ) | BK-25-13929-mkn |
| ) | Chapter 11, Subchapter V |
| VEGAS CUSTOM GLASS LLC., ) | |
| ) | Date: September 17, 2025 |
| ) | Time: 9:30 a.m. |
| ) | Teleconference line: (833 435-1820 |
| ) | Meeting ID: 161 062 2560 |
| DEBTOR. ) | Pass code: 029066# |
| ) | |

**EMERGENCY MOTION OF DEBTOR FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT**
**AND TO PROVIDE ADEQUATE PROTECTION**

VEGAS CUSTOM GLASS LLC., as debtor and debtor in possession (the "Debtor" or "VCG"), herein, by and through its Attorney James T. Leavitt of Leavitt Legal Services P.C., makes its Motion for Authority to Enter into Insurance Premium Finance Agreement and to Provide Adequate Protection, and in support thereof, states as follows:

1. On July 9th, 2025, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor is a domestic corporation that is operating its business and managing its financial affairs as Debtor-in-Possession. Brian Shapiro has been appointed to serve as Trustee in this reorganization case.

3. The Debtor is operating from its facilities in Las Vegas, Nevada. The Debtor provides specialized glass fabrication and installation services.

4. The Debtor currently employs approximately 16 people while operating its business in the normal course.

5. To the extent Debtor specializes in glass fabrication and installation, it is necessary to maintain adequate insurance coverage, among which, includes commercial general liability, workers compensation, and employee liabilty.

6. The Debtor is prepared to execute a Premium Finance Agreement ("Premium Finance Agreement") with Zions Bank Corporation, N.A dba Zions First National Bank ("Lender") and Allegiance Premium Company LLC, as a funding intermediary lender, (intermidiary and together with lender, collectivley, the "secured parties") hereinafter ("Allegiance premium Finance Company") Allegiance Premium Finance Company for the financing of the Debtor's general liability, professional liability and auto commercial insurance policies ("the Policies") upon court approval. A true and correct copy of the Premium Finance Agreement is attached hereto as Exhibit A.

7. Pursuant to the Premium Finance Agreement, Allegiance Premium Finance Company will provide financing to Debtor for the purchase of the Policies, which are essential for the operation of Debtor's business. Under the Premium Finance Agreement: a. The total premium amount is $26,026.95 b. The cash down payment is $7,621.39 c. The amount financed is $18,405.56 d. The finance charge is $1,559.77 e. The total of payments equals $19,965.33 f. The balance will be paid in eleven (11) monthly installments of $1,815.03 each g. The installment payments are due on the 12th day of each month commencing on August 12, 2025 h. The annual percentage rate is 16.5% i. Late charges of 5% of any installment in default for more than 10 days may be assessed, with a minimum late charge of $25.00 j. NSF charges of $25.00 may be assessed for returned checks

8. As collateral to secure the repayment of the total payments, any late charges, attorney's fees and costs (the "Indebtedness") under the Premium Finance Agreement, Debtor is granting Allegiance Premium Finance Company a security interest in, among other things, the unearned premiums under the Policies, any credits generated by the Policies, dividend payments, and loss payments which reduce the unearned premium.

9. The Premium Finance Agreement provides that the loan terms are governed by the applicable federal law and Illinois law (to the extent not preempted by federal law).

10. Pursuant to the terms of the Premium Finance Agreement, Debtor is appointing Allegiance Premium Finance Company as its attorney-in-fact with the irrevocable power to cancel the Policies and collect the unearned premium in the event Debtor is in default of its obligations under the Premium Finance Agreement.

11. Debtor and Allegiance Premium Finance Company have reached an agreement that the adequate protection appropriate for this situation would be as follows: a) Debtor be authorized and directed to timely make all payments due under the Premium Finance Agreement and Allegiance Premium Finance Company be authorized to receive and apply such payments to Indebtedness owed by Debtor to Allegiance Premium Finance Company as provided in the Premium Finance Agreement. b) If Debtor does not make any of the payments due under the Premium Finance Agreement as they become due, the automatic stay shall automatically lift to enable Allegiance Premium Finance Company and/or third parties (without further order of the Court), including insurance companies providing the coverage under the Policies, to take all steps necessary and appropriate to cancel the Policies, collect the collateral and apply such collateral to Indebtedness owed to Allegiance Premium Finance Company by Debtor. In exercising such rights, Allegiance Premium Finance Company and/or third parties shall comply with the notice and other relevant provisions of the Premium Finance Agreement.

12. Debtor believes that the terms of the Premium Finance Agreement are commercially fair and reasonable, including the granting of a lien on the Policies to Allegiance Premium Finance Company. Debtor is required to maintain adequate insurance coverage and, without it, Debtor would be forced to cease operations. Debtor has been unable to obtain unsecured credit to fund the Policies.

13. The relief requested by this Motion is warranted and appropriate under the circumstances. Debtor submits that authorization of the Premium Finance Agreement will ensure that

Debtor can continue necessary operations, and will not prejudice the legitimate interests of creditors and other parties in interest, including Debtor's secured creditors.

**WHEREFORE, PREMISES CONSIDERED**, Debtor respectfully requests that this Court enter an Order authorizing it to enter into the Premium Finance Agreement with Allegiance Premium Finance Company, and that Debtor and Allegiance Premium Finance Company be authorized and directed to take all actions necessary or appropriate to effectuate said agreement and for such other and further relief as is just and proper.

DATED this 15th day of August, 2025.    Submitted by:

LEAVITT LEGAL SERVICES, P.C.

By: *James T. Leavitt*
    James T. Leavitt, Esq.
    Leavitt Legal Services, P.C.
    601 S. Sixth Street
    Las Vegas NV 89101
    Proposed Attorney for Debtor-in-Possession

**LEAVITT LEGAL SERVICES, P.C.**
**JAMES T. LEAVITT, ESQ.**
State Bar No. 012803
601 South 6th Street
Las Vegas, Nevada 89101
Phone: (702) 385-7444 Facsimile: (702) 385-1178
Jamestleavittesq@gmail.com, Leavittecf@gmail.com
Proposed Attorney for Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | BK-25-13929-mkn |
| | Chapter 11, Subchapter V |
| VEGAS CUSTOM GLASS LLC., | |
| | |
| DEBTOR. | |

**ORDER AUTHORIZING TO ENTER INTO**
**INSURANCE PREMIUM FINANCE AGREEMENT**
**AND TO PROVIDE ADEQUATE PROTECTION**

ON THIS DAY, came on for consideration the Motion of Vegas Custom Glass, LLC., ("Debtor") For Authority to Enter into Insurance Premium Finance Agreement and to Provide Adequate Protection ("Motion") through which Debtor seeks the Court's approval of the agreement and to provide adequate protection of the interests of Allegiance Premium Finance Company in the bankruptcy case and, it appearing to the Court that the operative facts as stipulated by the parties, are those appearing in the Motion, it is hereby ORDERED THAT:

1. The Motion is granted.
2. Debtor is authorized and directed to:
   - enter into the Premium Finance Agreement attached to the Motion as Exhibit "A" (the "Premium Finance Agreement");
   - grant Allegiance Premium Finance Company or its successor or assigns a first priority lien on and security interest in the Policies[1], including the unearned

    premiums and other collateral (collectively, the "Collateral"), as described in the Premium Finance Agreement; and

- timely make all payments due under the Premium Finance Agreement. Allegiance Premium Finance Company is authorized to receive and apply such payments to the Indebtedness owed by Debtor to Allegiance Premium Finance Company as provided in the Premium Finance Agreement.

3. Without limitation, the liens, security interests and rights in the Collateral granted under the Premium Finance Agreement: (i) are senior to (a) the liens of any lender providing DIP or cash collateral financing in this Case and (b) to any claims under 11 U.S.C. §§ 503, 506(c) or 507(b); and (ii) shall not be subject to avoidance, priming or surcharge by any party in interest. Pursuant to the Premium Finance Agreement, the Debtor irrevocably appoints Allegiance Premium Finance Company as its attorney-in-fact in the event of default to cancel any financed insurance Policies and collect the Collateral, as described herein.

4. If additional premiums become due to insurance companies under the Policies financed under the Premium Finance Agreement, Debtor and Allegiance Premium Finance Company or its successor or assigns are authorized to modify the Premium Finance Agreement as necessary to pay the additional premiums without the necessity of further hearing or order of this Court.

5. In the event Debtor does not make any of the payments under this Agreement or the Premium Finance Agreement as they become due, the automatic stay shall automatically lift to enable Allegiance Premium Finance Company and/or third parties (without further order of this Court), including insurance companies providing the protection under the Policies, to take all steps necessary and appropriate to cancel the Policies, collect the Collateral and apply such Collateral to the Indebtedness owed to Allegiance Premium Finance Company by Debtor.

6. Allegiance Premium Finance Company or any third party, including insurance companies providing the coverage under the Policies, exercising such rights shall comply with the notice provisions and other provisions of the Premium Finance Agreement.

7. The Premium Finance Agreement and the liens and security interests in the Collateral granted pursuant hereto shall continue in full force and effect and Indebtedness due under the Premium Finance Agreement shall remain due and owing notwithstanding: (i) the dismissal or closure of this Case, (ii) the discharge of Debtor, or (iii) the confirmation of a plan of reorganization.

8. To the extent that any audits need to be performed by any carrier on any of the Policies, the Debtor or the trustee subsequently appointed under Chapters 7 or 11, shall reasonably cooperate.

9. The terms and conditions of this Order will be immediately effective and enforceable upon its entry.

IT IS SO ORDERED.

Agreed as to form and consent:
**ATTORNEYS FOR DEBTOR,**
    **IT IS SO ORDERED**

PREPARED AND SUBMITTED:        APPROVED

LEAVITT LEGAL SERVICES          OFFICE OF THE U.S. TRUSTEE

By  /s/ James T. Leavitt                By: /s/ _____
JAMES T. LEAVITT, ESQ.
601 South 6th Street                      300 Las Vegas Blvd So. Suite 4300
Las Vegas, Nevada 89101           Las Vegas, Nevada 89101
Attorney for Debtor-in-Possession     Attorney for Tracy Hope Davis

### LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

    ___ The court has waived the requirement set forth in LR 9021(b)(1).

    ___ No party appeared at the hearing or filed an objection to the motion.

    ___ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above.

    ___ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

###

# CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Leavitt Legal Services, P.C. and that, on the 15th day of August 2025, I caused to be served a true and correct copy of

***EMERGENCY MOTION OF DEBTOR FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT AND TO PROVIDE ADEQUATE PROTECTION***

in the following manner:

  **X**   (ELECTRONIC SERVICE) Under Local Rule 5005 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

       (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first-class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date written above.

       (OVERNIGHT COURIER) By depositing a true and correct copy of the abovereferenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date written above.

       (FACSIMILE) By serving a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those listed on the attached service list, and on the date written above.

DATED this 15th day of August 2025

| Melissa Milroy | /s/ Melissa Milroy |
|---|---|
| **(Name of Declarant)** | **(Signature of Declarant)** |

# Exhibit A

**Allegiance Premium Finance Company** & **ZIONS BANK®**

PO Box 1750 - Cedar City, UT 84721
Phone: (800) 549-4828  -  Fax: (866) 253-1114
apfc@leavitt.com  -  apfc.leavitt.com

## PREMIUM FINANCE SECURITY AGREEMENT

| Agent/Broker/Producer | Borrower |
|---|---|
| Leavitt Insurance Agency, Inc.<br>7881 West Charleston Blvd<br>#140<br>Las Vegas, NV 89117 | Vegas Custom Glass, LLC<br><br>6255 McLeod Dr. Ste 21<br>Las Vegas, NV 89120 |

| Total Premiums | Down Payment | Amount Financed<br><br>The amount of credit provided to you or on your behalf. | Finance Charge<br><br>The dollar amount the credit will cost you. | Total of Payments<br><br>Amount you will have paid after making all scheduled payments. | Installment Amount | APR<br><br>The cost of your credit as a yearly rate. |
|---|---|---|---|---|---|---|
| $26,026.95 | $7,621.39 | $18,405.56 | $1,559.77 | $19,965.33 | $1,815.03 | 16.57% |

**Number Of Installments:** 11    **Installments Are Due:** 12th  Monthly    **The First Installment Is Due On:** 9/12/2025

### SCHEDULE OF POLICIES

| Policy Number | Effective Date | Insurance Company, General Agent, & Address | Policy Term | MEP % | Premium Details | |
|---|---|---|---|---|---|---|
| TBD | 8/12/2025 | Trisura Specialty Insurance Company () 210 Park Avenue Suite 1300 Oklahoma City, OK 73102<br><br>Burns & Wilcox (Salt Lake City) (G00198,BURNS & WILCOX) 280 S 400 W, Ste 200 Salt Lake City, UT 84101<br><br>Additional Policies on Page 3 | 12 | 25% | Auditable<br>Premium<br>Policy Fee<br>Broker Fee<br>Tax/Stamp<br>Inspection | ☐<br>$16,500.00<br>$1,500.00<br>$850.00<br>$735.15<br>$0.00 |

Florida documentary stamp tax:   $0.00                                                                                            P/F: 0

**BORROWER'S REPRESENTATIONS AND WARRANTIES:** Borrower represents and warrants to Zions Bancorporation, N.A. dba Zions First National Bank ("Lender") and Allegiance Premium Finance Company, LLC, as a funding intermediary for Lender (Intermediary" and together with Lender, collectively, the "Secured Parties"), as a material condition for obtaining credit that: (1) the execution, delivery and performance of Borrower of this Premium Finance Security Agreement ("Agreement") and any other related documents has been duly authorized by the governing body of Borrower as provided in Borrower's governing documents and will constitute a legal and binding agreement by Borrower and will not constitute a default under any agreement to which Borrower is bound; (2) Borrower has executed this Agreement and received a complete copy, including all pages, which Borrower has read in its entirety; (3) Borrower is not insolvent or in bankruptcy, and, if a corporation, limited liability company or partnership, is a going concern; (4) no other party has been granted a security interest in the Collateral described herein; (5) Borrower is a first named insured on the insurance policies identified herein ("Scheduled Policies"), and is the representative of all other insureds therein; (6) Borrower authorizes and will assist the Secured Parties to obtain information on Borrower from outside credit reporting services, as the Secured Parties may require; (7) if Borrower is a corporation, limited liability company or partnership, the signer is a corporate officer, manager or managing member or partner of Borrower; (8) the insurance agents, brokers, and insurers identified herein have been selected by, and represent, the Borrower, not the Secured Parties; and (9)Borrower will pay any additional premiums that may be assessed against the Scheduled Policies, as and when assessed by the respective insurer(s), to protect the value of the Collateral pledged to the Secured Parties.  BORROWER AGREES THAT THE PROVISIONS ON ALL PAGES OF THIS FORM, INCLUDING ANY ADDITIONAL PAGES LISTING SCHEDULED POLICIES, CONSTITUTE A PART OF THIS AGREEMENT, AND THAT ALL OF THE INFORMATION IS TRUTHFUL, ACCURATE AND COMPLETE.

**SECURITY INTEREST AND POWER OF ATTORNEY:** To secure (i) Borrower's payment to Lender of the amounts set forth above and all other obligations, indebtedness and liabilities of Borrower owed to Lender hereunder or any other related documents, and Borrower's performance of its obligations set forth in this Agreement or any other related documents owed to Lender (collectively, the "Lender Obligations"), and (ii) Borrower's performance of its obligations set forth in this Agreement or any other related documents owed to Intermediary, for Intermediary's own benefit or for the benefit of Lender as Lender's agent hereunder (collectively, the "Intermediary Obligations" and, together with the Lender Obligations, collectively, the "Obligations"), Borrower pledges, assigns, and grants to the Secured Parties and their successors and assigns, a security interest in any unearned and or return insurance premiums, accrued dividends, and loss payments which would reduce unearned premiums (collectively, "Collateral"), associated with the Scheduled Policies.  Borrower irrevocably appoints the Secured Parties or their assigns as its attorney-in-fact, with full authority to cancel any and all of the Scheduled Policies upon Borrower's default, for the Secured Parties to obtain full and prompt payment and performance of all Obligations.  The Secured Parties or their assigns shall mail to Borrower at the address shown in their records at least 10 days prior to cancellation, a notice of intent to cancel Scheduled Policies if default is not cured within that time period.

| _____ | owner | XXXXXX1419 |
|---|---|---|
| Borrower's Authorized Signature | Title of Authorized Signature | FEIN (or SSN for sole proprietor). |

| Vincent Regala | 08/12/2025 | |
|---|---|---|
| Print Name of Authorized Signature | Date | Print Name of SSN Holder (if applicable). |

For electronic notifications please list email address here:    _____

**PRODUCER'S REPRESENTATION:** The Producer warrants and agrees: (1) Borrower has received a copy of this Agreement, has authorized this transaction, Borrower's signatures are genuine or are those of its properly and duly authorized representative(s), and the Down Payment, as described herein, has been received from Borrower in cash; (2) the policies are in full force and effect and the information in the Schedule of Policies and the premium is correct; (3) no Audit or Reporting Form Policies, policies subject to Retrospective Rating or to minimum earned premiums are included except as indicated, and the Deposit of Provisional Premiums is not less than anticipated premiums to be earned for the full term of the policies; (4) the policies can be cancelled by Borrower or the Secured Parties (or their successors and assigns) on 10 days' notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated; (5) there are no bankruptcy proceedings affecting Borrower; and (6) to hold the Secured Parties, their successors and assigns harmless against any loss resulting from violations of these representations or from errors, omissions, or inaccuracies of the Producer in preparing this Agreement.

| _____ | _____ |
|---|---|
| Producer's Signature | Date |

**THIS AGREEMENT IS TWO OR MORE PAGES. SEE OTHER PAGE(S) FOR IMPORTANT TERMS AND RESPONSIBILITIES.**

## FURTHER PROVISIONS OF PREMIUM FINANCE SECURITY AGREEMENT

**GENERAL LOAN TERMS:** This Premium Finance Security Agreement ("Agreement") constitutes the entire agreement between the undersigned borrower ("Borrower"), and Zions Bancorporation, N.A. dba Zions First National Bank ("Lender") and Allegiance Premium Finance Company, LLC, as a funding intermediary and servicer for Lender hereunder ("Intermediary" and, together with Lender, collectively, the "Secured Parties"), and shall not take effect until (1) Borrower returns this signed Agreement; and (2) this Agreement is approved by the Secured Parties' respective credit departments and Borrower's insurance carrier(s).  In consideration of the loan ('Loan Amount') made by Lender for the purpose of paying on Borrower's behalf the listed premiums for the insurance policies identified herein ("Scheduled Policies"), Borrower promises to pay to Intermediary, for and on behalf of Lender, the Loan Amount plus interest, if any, and any itemized fees ("Total of Payments"), in accordance with the payment schedule shown above, and to abide by all terms and conditions stated in this Agreement.  Borrower authorizes and directs Lender, whether directly or through the Intermediary, to pay the Loan Amount to the insurance agents, broker, or insurers listed herein.  Borrower understands that the Secured Parties assume no responsibility for payment by agents or broker to the insurers, and holds the Secured Parties harmless from all liability arising from any acts or omissions of the agents or brokers.  If Borrower defaults, Borrower agrees to pay the remaining account balance in its entirety upon demand by the Secured Parties, notwithstanding the existence of the Secured Parties' remaining security interest in the collateral pledged by Borrower.  Default includes any one of the following:  (1) failing to pay any installment to Intermediary, for and on behalf of Lender, at its mailing address by the date it is due; (2) misrepresenting any information contained herein, whether provided by the Borrower or its agent or broker, including, but not limited to, the pre-condition that the stated down payment ("Down Payment") has been made to the listed insurers or Intermediary; and (3) failing to abide by any other terms and conditions of this Agreement.

### BORROWER AND SECURED PARTIES ALSO AGREE

**PREPAYMENT:**  Interest, if any, is calculated according to a 30/360 amortized schedule. You may prepay this loan, in full or in part, without penalty. If you repay the loan prior to the scheduled maturity date, you may be entitled to a rebate of a portion of the finance charge, if any.

**CANCELLATION CHARGES:**  If a default by Borrower results in cancellation of any insurance policy listed herein, the Borrower shall pay a cancellation charge of $25.00.  The Secured Parties reserve the right to revise charges consistent with applicable law upon not less than thirty days' notice to Borrower.

**DELINQUENCY CHARGES:**  For installments which are in default 5 days or more, the Borrower will pay a late charge of 5 percent of any installment which is in default, subject, where applicable, to a $26.00 minimum.  The acceptance by the Secured Parties of one or more late payments from Borrower shall not estop the Secured Parties, or be a waiver of the rights to the Secured Parties, to exercise all of their rights hereunder in the event of any subsequent late payment.  The Secured Parties reserve the right to revise these charges consistent with applicable law upon not less than thirty days' notice to Borrower.

**DELINQUENT ACCOUNTS:** Accounts that are in delinquent status [past due] may be turned over to an outside collections agency. Such accounts may also be reported to a credit bureau, and this may affect Borrower's ability to receive credit in the future.

**INSUFFICIENT FUNDS:**  A charge of $20.00 shall be made for each NSF check.  The Secured Parties reserve the right to revise these charges consistent with applicable law upon not less than thirty days' notice to Borrower.

**SERVICE CHARGE:**  Finance charges, if applicable, may be refunded on a prorated basis in the event of prepayment.  No refund will be paid unless the amount of such refund exceeds $5.00.  The Secured Parties reserve the right to revise these charges consistent with applicable law upon not less than thirty days' notice to Borrower.

**CREDITCHECKS:** The Secured parties reserve the right to run a credit report on all Borrowers. All Borrowers agree to a credit report.

**AUDITABLE POLICIES:** All Borrowers with auditable policies, by signing this Agreement, agree to cooperate with the insurance carrier when developing audit premiums.

**REINSTATEMENT:**   Any payments made by the Borrower and received by Intermediary,  for and on behalf of Lender, subsequent to the mailing of notice of cancellation of a policy shall be credited against the indebtedness owing by Borrower without any obligation on the part of the Secured Parties to request reinstatement of the policy.  If Borrower requests reinstatement, Borrower agrees that the Secured Parties have no liability to Borrower if the policy is not reinstated.  Only the insurance company has the authority to reinstate the policy.

**ASSIGNMENT:**  Borrower agrees not to assign any policy listed hereon or any interest therein except for the interest of mortgages or loss payees, without the written consent of the Secured Parties; that the Secured Parties may sell, transfer, and assign their rights hereunder or under any policy without the consent of Borrower; and that all agreements made by Borrower hereunder and all rights and benefits conferred upon the Secured Parties hereunder  shall inure to the benefit of the Secured Parties' successors and assigns (and any assignee thereof).

**INSURANCE AGENT OR BROKER:** Borrower agrees that the insurance agent or broker soliciting the policies or through whom the policies were issued to
is not the agent of the Secured Parties, and the Secured Parties are not legally bound by anything the agent or broker represents to Borrower, orally or in writing.

**AGREEMENT NOT REQUIRED BY LAW:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance.

**COLLECTION COSTS:** Borrower agrees to pay the Secured Parties' attorney's fees and other costs, as permitted by law, if this Agreement is referred to an attorney for collection.

**LIMITATION OF LIABILITY:** Borrower agrees that the Secured Parties' liability to Borrower, any person or corporation for breach of any of the terms of this Agreement or the wrongful exercise of the right or authority of cancellation shall be limited to the amount of the principal balance outstanding, except in the event of willful misconduct.

**FOR NEVADA ONLY:** Pursuant to Nevada Law, your agent is required to disclose to you if the agency for which your agent writes business has a financial interest in Intermediary.

**FOR FLORIDA RESIDENTS:** Included in the amount financed is a Florida documentary stamp tax, which we collect on behalf of the State of Florida. For rate calculation visit Florida Dept of Revenue at http://dor.myflorida.com/dor/taxes/doc_stamp.html.

**GOVERNING LAWS:** This premium finance loan will be governed by the applicable laws of Utah.

**ADDITIONAL PREMIUM FINANCING:**  Insured authorizes Lender to make additional advances under this premium finance agreement at the request of either the Insured or the Insured's agent with the Insured's express authorization, and subject to the approval of Lender, for any additional premium on any policy listed in the Schedule of Policies due to changes in the insurable risk.  If Lender consents to the request for an additional advance, Lender will send Insured a revised payment amount ("Revised payment Amount").  Insured agrees to pay the Revised Payment Amount, which may include additional finance charges on the newly advanced amount, and acknowledges that Lender will maintain its security interest in the Policy with full authority to cancel all policies and receive all unearned premium if Insured fails to pay the Revised Payment Amount.

# ADDITIONAL POLICIES

| **Agent/Broker/Producer**                                                                 | **Borrower**                                                          | Page 3 of  3 |
|---|---|---|
| Leavitt Insurance Agency, Inc.<br>7881 West Charleston Blvd<br>#140<br>Las Vegas, NV 89117 | Vegas Custom Glass, LLC<br>6255 McLeod Dr. Ste 21<br>Las Vegas, NV 89120 | |

| Policy Number | Effective Date | Insurance Company, General Agent, & Address | Policy Term | MEP % | Premium Details | |
|---|---|---|---|---|---|---|
| TBD | 8/12/2025 | SCOTTSDALE INSURANCE CO () PO Box 182451 Columbus, OH 43218-2451<br><br>Burns & Wilcox (Salt Lake City) (G00198,BURNS & WILCOX) 280 S 400 W, Ste 200 Salt Lake City, UT 84101 | 12 | 25% | Auditable Premium<br>Policy Fee<br>Broker Fee<br>Tax/Stamp<br>Inspection | ☐ $5,530.00<br>$500.00<br>$0.00<br>$241.80<br>$170.00 |
|  |  |  |  |  | Auditable Premium<br>Policy Fee<br>Broker Fee<br>Tax/Stamp<br>Inspection | ☐ |
|  |  |  |  |  | Auditable Premium<br>Policy Fee<br>Broker Fee<br>Tax/Stamp<br>Inspection | ☐ |
|  |  |  |  |  | Auditable Premium<br>Policy Fee<br>Broker Fee<br>Tax/Stamp<br>Inspection | ☐ |
|  |  |  |  |  | Auditable Premium<br>Policy Fee<br>Broker Fee<br>Tax/Stamp<br>Inspection | ☐ |
|  |  |  |  |  | Auditable Premium<br>Policy Fee<br>Broker Fee<br>Tax/Stamp<br>Inspection | ☐ |
|  |  |  |  |  | Auditable Premium<br>Policy Fee<br>Broker Fee<br>Tax/Stamp<br>Inspection | ☐ |
|  |  |  |  |  | Auditable Premium<br>Policy Fee<br>Broker Fee<br>Tax/Stamp<br>Inspection | ☐ |
|  |  |  |  |  | Auditable Premium<br>Policy Fee<br>Broker Fee<br>Tax/Stamp<br>Inspection | ☐ |